UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

CIVIL MINUTES - GENERAL

| Case No. | CV 11-08757 MMM (MRWx) | Date | January 31, 2012 |
|---|---|---|---|

| Title | *Buckles v. City of Hope National Medical Center et al.* |
|---|---|

Present: The Honorable    MARGARET M. MORROW

| ANEL HUERTA | None |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

Proceedings:          **Order Remanding Action for Lack of Subject Matter Jurisdiction[7]**

On September 21, 2011, plaintiff Milissa Buckles filed this action in Los Angeles Superior Court against defendants City of Hope National Medical Center ("CHMC"), City of Hope ("CH"), and certain fictitious defendants, alleging wrongful termination based on discrimination.[1] On October 21, 2011, defendants removed the action to federal court.[2]  Buckles filed a motion to remand the action to state court on November 3, 2011,[3] which defendants oppose.[4]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Buckles asserts she is physically disabled due to a patent foramen ovale, that is, a hole in her

---

[1]Notice of Removal, Docket No. 1 (Oct. 21, 2011), Exh. A ("Complaint").

[2]Notice of Removal.

[3]Motion to Remand ("Motion to Remand"), Docket No. 7 (Nov. 3, 2011); see also Plaintiff Milissa Buckles' Reply to Defendants' Opposition to Motion to Remand ("Reply"), Docket No. 14 (Jan. 23, 2012).

[4]Opposition to Motion to Remand Case ("Opposition"), Docket No. 13 (Jan. 16, 2012).

heart.[5]  Buckles was hired by defendants in 2003.  She worked first as a registered nurse and later as a nurse case manager.[6]  At the time of Buckles' termination, her employment was governed by a collective bargaining agreement ("CBA") between the California Nurses Association ("CNA") and defendants.[7]  In August 2010, Buckles allegedly needed to take a medical leave to undergo surgery to repair her heart.  She asserts she updated defendants on her status and expected return date throughout her leave.[8]  In October 2010, defendants terminated Buckles' employment.  Buckles contends she was terminated while still on medical leave[9] due to her physical disability.[10]  Defendants argue that she was discharged because she exceeded her maximum available medical leave.[11]

Buckles asserts six causes of action: (1) employment discrimination based on physical disability; (2) failure reasonably to accommodate her physical disability; (3) failure to engage in a timely, good faith, interactive process with a physically disabled employee; (4) failure to provide medical leave; (5) wrongful termination; and (6) wrongful termination in violation of public policy. The first five claims allege violations of the California Fair Employment and Housing Act (FEHA), California Government Code § 12900 et seq.[12]

In its notice of removal, defendant contend that Buckles' claims arise out of or require reference to the CBA, and that the court thus has federal question jurisdiction to hear the action under section 301 of the Labor Management and Relations Act ("LMRA") 29 U.S.C. § 185(a).[13]  In her motion to remand, plaintiff counters that the complaint pleads solely state law claims, and that sjhe chose not to file federal claims.[14]  Plaintiff argues that the mere fact that she was employed pursuant to a CBA does not mean that her claims are preempted by the LMRA.[15]

---

[5]Complaint, ¶ 2.

[6]Motion to Remand at 1.

[7]Opposition at 1.

[8]Complaint, ¶ 11.

[9]*Id.*, ¶ 43.

[10]*Id.*, ¶ 11.

[11]Opposition at 5.

[12]See Complaint.

[13]Notice of Removal at 3-4.

[14]Opposition at 1.

[15]Motion to Remand at 1.

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds the matter appropriate for decision without oral argument and vacates the hearing scheduled for February 6, 2012.

## II.  ANALYSIS

### A.      Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute.  See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).  The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a).   Only state court actions that could  originally  have  been  filed  in  federal  court  may  be  removed.   28  U.S.C.  § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).   "Federal district courts have original federal question jurisdiction of actions 'arising under the Constitution, laws, or treaties of the United States.'"  *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371 (9th Cir.1987 ) (quoting 28 U.S.C. § 1331). Generally, a claim "arises under" federal law only if a federal question appears on the face of plaintiff's complaint.  Thus,  removal jurisdiction is lacking even if defendant asserts a defense based exclusively on federal law.  *Caterpillar*, 482 U.S. at 392 ("The party who brings the suit is master to decide what law he will rely upon").

There are, however, exceptions to this "well-pleaded complaint rule" that allow the court to look beyond the face of plaintiff's pleading.  Among these is the "artful pleading" doctrine, which provides that a plaintiff cannot defeat removal of a federal claim by disguising or pleading it artfully as a state law cause of action.   If the claim arises under federal law, the federal court will recharacterize the claim and uphold removal. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 n. 2 (1981); *Schroeder v. TransWorld Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983).  The "artful pleading" doctrine applies to state claims that are completely preempted by federal law.  See *Caterpillar*, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law"); *Sullivan*, 813 F.2d at 1372 ("A traditional example of the artful pleading doctrine is one in which the defendant has a federal preemption defense to a state claim and federal law provides a remedy").  See also *ARCO Environmental Remediation, L.L.C. v. Department of Health & Environmental Quality of Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000) ("A state-created cause of action can be deemed to arise under federal law (1) where federal law completely preempts state law . . . [or] (2) where the right to relief depends on the resolution of a substantial, disputed federal question").

The  complete  preemption  doctrine,  however,  is  narrowly  construed.   See  *Holman v.*

*Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993) ("The [complete preemption] doctrine does not have wide applicability; it is a narrow exception to the 'well-pleaded complaint rule'"); *Gatton v. T-Mobile USA, Inc.*, No. SACV 03-130 DOC, 2003 WL 21530185, *5 (C.D. Cal. Apr. 18, 2003) ("The complete preemption doctrine is, however, extremely narrow," citing *TPS Utilicom Services, Inc. v. AT & T Corp.*, 223 F.Supp.2d 1089, 1097 (C.D. Cal. 2002)).  "[O]nly three areas have been deemed areas of complete preemption by the United States Supreme Court: (1) claims under the Labor Management Relations Act [LMRA]; (2) claims under the Employment Retirement and Insurance Security Act (ERISA); and (3) certain Indian land grant rights." *Gatton*, 2003 WL 21531085 at *5; see also *Robinson v. Michigan Consolidated Gas Co. Inc.*, 918 F.2d 579, 585 (9th Cir. 1990) ("complete preemption . . . is extremely limited, existing only where a claim is preempted by [the LMRA]; where a state law complaint alleges a present right to possession of Indian tribal lands; and where state tort or contract claims are preempted by [ERISA]" (internal citations omitted)).

### B.     Legal Standard Governing § 301 Preemption

Section 301(a) of the LMRA gives federal courts exclusive jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a).  See *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 23 (1983) ("The preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'  Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301"); see also *Caterpillar*, 482 U.S. at 394 ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement,'" quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 859 n. 3 (1987)).  Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 404  n. 3 (1988).

To further the goal of uniform interpretation of labor contracts, the preemptive effect of § 301 has been extended beyond suits that allege the violation of a collective bargaining agreement.  See *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11 (1985) ("The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation").  Thus, a state law claim will be preempted if it is so "inextricably intertwined" with the terms of a labor contract that its resolution will require judicial interpretation of those terms.  *Id.* at 213 (holding that a claim for breach of the duty of good faith and fair dealing was preempted by § 301 because "good faith" and "fair dealing" had to be assessed with reference to the contractual obligations of the parties).

Despite the broad preemptive effect of § 301, a claim that seeks to vindicate "nonnegotiable state-law rights . . . independent of any right established by contract" is not within its scope.

4

*Allis-Chalmers*, 471 U.S. at 213; see also *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994) ("[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law. . . . [I]t is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . that decides whether a state cause of action may go forward" (citations omitted)).[16]   As a result, if a state law cannot be waived or modified by private contract, and if the rights it creates can be enforced without resort to the particular terms, express or implied, of a labor contract, § 301 does not preempt a claim for violation of the law.  See *Miller v. AT&T Network Systems*, 850 F.2d 543, 546 (9th Cir. 1988).  "If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense."  *Cramer*, 255 F.3d at 691.

Nor can a defendant invoke preemption merely by alleging a "hypothetical connection between the claim and the terms of the CBA," or  a "creative linkage" between the subject matter of the suit and the wording of a CBA.  *Id.* at 691-92.  To prevail, "the proffered interpretation argument must reach a reasonable level of credibility."  *Id.* at 692.  A preemption argument is not credible "simply because the court may have to consult the CBA to evaluate [a plaintiff's claim]; [similarly,] 'look[ing] to' the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption."  *Id.* (quoting *Livadas*, 512 U.S. at 125).  In *Cramer*, the Ninth Circuit clarified the scope of the LMRA's preemptive effect:

> "To the extent our prior cases held or implied that preemption was proper because of the mere possibility that the subject matter of the claim was a proper subject of the collective bargaining process, whether or not specifically discussed in the CBA, we today hold such statements to be an incorrect articulation of § 301 preemption principles.  A state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute."  *Cramer*, 255 F.3d at 693.

See also *Humble v. Boeing Co.*, 305 F.3d 1004, 1007-08 (9th Cir. 2002) (recognizing that *Cramer* "revised [the] framework for analyzing § 301 preemption and synthesized the considerations involved").

The Ninth Circuit has articulated a two-part test to determine whether a cause of action is preempted by the LMRA.  *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).  First, the court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA.  If the right exists solely as a result of the CBA,

---

[16]The Supreme Court in *Livadas* held that the state law claim asserted in that case required only that the court "look to" the CBA to determine the applicable rate of pay.  It concluded the fact there was "no indication that there was a 'dispute'" regarding the rate of pay "foreclose[d] even a colorable claim" of preemption.  *Livadas*, 512 U.S. at 124-25.

then the claim is preempted, and our analysis ends there.  If, however, the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'  If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law."  *Id.* at 1059-60 (citations omitted).  The court addresses each part of the test in turn.

### C.    Whether Plaintiff's Claims Are Preempted

In accordance with *Burnside*, the court first examines whether Buckles' causes of action involve rights conferred on employees by state law rather than a CBA.  *Burnside*, 491 F.3d at 1059.  Buckles alleges six claims: (1) employment discrimination based on physical disability; (2) failure reasonably to accommodate physical disability; (3) failure to engage in a timely, good faith, interactive process with a disabled employee; (4) failure to provide medical leave; (5) wrongful termination and (6) wrongful termination in violation of public policy.[17]  The first five claims allege violations of FEHA, and are thus directly based on rights created by state law.  FEHA, moreover, codifies state public policy; thus the final claim is also based on state law.[18]  See *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 643-44 (9th Cir. 1989) (finding that a wrongful termination in violation of public policy claim based on Government Code § 12920 was not preempted).  Defendants do not argue that any of the rights on which Buckles' claims are based were rights afforded only by the CBA.[19]  The court therefore moves to step two of the *Burnside* analysis.

At the second step, the court must determine whether plaintiff's claims are "nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'"  *Burnside*, 491 F.3d at 1059 (citations omitted).  Defendants contend that resolving the case requires that the court interpret several CBA provisions.  They cite portions of the CBA concerning (1) equal employment, (2) medical leave, (3) seniority, and (4) the handling of grievances.  The court considers each provision in turn.

---

[17]As in *Espinal v. Northwest Airlines*, the parties here treat plaintiff's allegation of wrongful termination in violation of public policy as a companion claim to the claims pleading violation of FEHA.  See *Espinal v. Northwest Airlines*, 90 F.3d 1452, 1456 n. 5 (9th Cir. 1996) (stating that a wrongful termination in violation of public policy claims was a "companion" to plaintiff's FEHA claim, and "address[ing] the claims together").

[18]FEHA states that it is the public policy of California to protect the employment rights of the physically handicapped.  See CAL. GOV'T CODE § 12920 ("It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . physical disability").

[19]See Opposition at 5 ("Thus, here, while Plaintiff's Complaint does not expressly purport to state a federal claim, all of Plaintiff's state law claims are preempted by Section 301, and are inextricably intertwined with the CBA as they require an interpretation of the CBA").

The first provision cited by plaintiff states: "The Employer and the Association agree that there shall be no unlawful discrimination by either of the parties on account of race, color, religion, national origin, sex, disability or sexual origin."[20]  As the Supreme Court held in *Lingle*, "the mere fact that a broad contractual protection against discriminatory – or retaliatory – discharge may provide a remedy for conduct that co-incidentally violates state law does not make the existence or the contours of the state-law violation dependent upon the terms of the private contract." *Lingle*, 486 U.S. at 412-13. The Court explained that this is because conduct might be discriminatory, and violative of state law, even if it did not constitute impermissible discrimination under the CBA. *Id.* at 413.  Applying this holding, the Ninth Circuit has held that there is no LMRA preemption where a CBA clause "broadly prohibits discrimination on the basis of race, color, religion, sex, age, . . . or because of handicap." *Ackerman v. Western Elec. Co., Inc.*, 860 F.2d 1514, 1517 (9th Cir. 1988).  The *Ackerman* court noted:

> "California's statute confers upon employees certain rights not to be discriminated against because of physical handicap or medical condition.  That right is defined and enforced under state law without reference to the terms of any collective bargaining agreement.  Ackerman's state-law claim is consequently independent of the agreement. That she might also have separate remedies under the bargaining agreement makes no difference." *Id.*

Here, the CBA negotiated by defendants with plaintiff's union contained a broad provision barring discrimination on the basis of race, color, religion, sex, or disability.  For the reasons stated in *Ackerman*, the provision does not support a finding of preemption. *Id.*

Defendants next argue that the CBA provisions governing medical leave require interpretation to resolve plaintiff's claims.[21]  Part B, Article IV, Section B of the CBA states, in relevant part:

> "1. When an employee has exhausted all available sick leave and paid time off, and still requires additional time off from work for treatment or recuperation from an illness or injury, employees with more than six (6) months of service shall be granted an unpaid leave of absence provided the maximum time off, including any paid time off, shall not exceed a total of six (6) months in any eighteen (18) month period. . . .  No nurse shall be terminated for a leave of absence protected by Federal or State statute.

> . . .

> 4.  If an employee does not return to work on or before the expiration date of her medical leave, her employment shall be terminated unless, because of extenuating

---

[20]*Id.* at 2; CBA at 2.

[21]Opposition at 5.

circumstances, an extension is granted by her department head and the Vice President of Human Resources or designee."[22]

Defendants contend that they terminated plaintiff's employment in accordance with this provision of the CBA.[23] Despite this contention, it is not clear that Buckles' claims depend on the CBA. She alleges that she was hired in 2003, that in August 2010, she took medical leave, and that in October 2010, some two months later, she was terminated.[24] While defendants contend that Buckles was terminated because she "exceeded the CBA's maximum leave provisions and was terminated in accordance with the CBA,"[25] Buckles' allegations, compared with Part B, Article IV, Section B of the CBA, suggest otherwise. More fundamentally, defendants do not demonstrate that the dispute requires interpretation of the CBA's leave provisions.[26] First, it is not clear what the exact contours of the parties' dispute are – i.e., whether it concerns the amount of medical leave available to plaintiff, her entitlement to paid versus unpaid leave, or her entitlement to additional leave due to extenuating circumstances. The court thus cannot conclude that the CBA provision regarding the length of permitted medical leave is implicated by Buckles' suit, let alone that her claims are substantially dependent on that provision. This is particularly true because, as Buckles notes in her reply, the CBA specifically provides that "[n]o nurse shall be terminated for a leave of absence protected by the Federal and State statute."[27] Given this provision, to the extent that Buckles asserts a right to leave provided by state law, the CBA's leave provisions are not implicated.

Second, application of the provision defendants cite appears straightforward – the maximum length of leave for an employee like Buckles is clearly set forth, and requires at most a mathematical calculation to determine if Buckles exceeded her maximum leave during an eighteen month period. See

---

[22]CBA at 34-35.

[23]Opposition at 6.

[24]See Complaint, ¶¶ 9-11. Accepting these allegations as true, plaintiff was an employee for more than six months prior to the time she took leave. It does not appear that plaintiff took more than six months leave, such that she exceeded the "maximum" amount of leave she could take as an employee who had worked for defendants for more than six months. Moreover, the CBA provision cited by defendants does not state the amount of sick leave and paid time off to which any employee is entitled. Finally, there are no allegations in the complaint that indicate whether the leave plaintiff took was paid or unpaid.

[25]Opposition at 5.

[26]Indeed, the CBA appears to give Buckles up to six months medical leave. She alleges (and defendants do not appear to dispute) that she was terminated after three months of leave.

[27]Reply at 5; CBA at 35.

*Cramer*, 255 F.3d at 690-91 ("[T]he bare fact that a collective-bargaining agreement will be consulted during the court of state-law litigation plainly does not require the claim to be extinguished"); *id.* at 691 ("*Livadas* held that because the plaintiff's claim required the court only to 'look to' the CBA to determine her rate of pay, there was not even a 'colorable argument' for preemption, because her claim was 'entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer,'" citing *Livadas*, 512 U.S. at 124-25).

Defendants also argue that Buckles' suit implicates the CBA seniority provisions, since her requests for accommodation were "not reasonable if they would [have] usurp[ed] the legitimate right of other bargaining unit employees under, *inter alia*, the CBA's Seniority Provision.[28]  The Ninth Circuit addressed this argument in *Humble*, where Boeing argued that a plaintiff's reasonable accommodation claim was preempted because a provision of the CBA, "which provide[d] an intricate scheme of seniority, must necessarily be interpreted to determine for which jobs Humble would have been eligible if her accommodation took the form of a transfer to a light duty position." *Humble*, 305 F.3d at 1009-10.  The Ninth Circuit was unconvinced, noting "that a CBA provision does not trigger preemption when it is only potentially relevant to the state law claims, without any guarantee that interpretation or direct reliance on the CBA terms will occur."  *Id.* at 1010. The court observed:

> "In the present case, . . . Humble has never argued that she might have been accommodated only by a transfer to another position. . . . Accordingly, Article 22's seniority provisions might not be implicated at all if Humble pursues as a theory of the case that Boeing made no reasonable effort to modify the duties of her existing bench mechanic position, or if she seeks to establish that Boeing simply failed to look for available positions or inform her of any available positions of which it was aware."  *Id.*

Buckles does not clearly allege what accommodation she sought, what accommodation was needed, or what accommodation was denied by defendants.[29]  Like *Humble*, therefore, there is no indication that Buckles' allegation that defendants failed reasonably to accommodate her implicate the CBA's seniority provisions.  Moreover, as the *Humble* court explained, "the mere need to refer to a CBA to determine the jobs for which a disabled employee might be eligible may not be sufficient to trigger § 301 preemption, even if such consultation is certain to occur." *Humble*, 305 F.3d at 1010.  It stated:

> "We do not discount the possibility that in the course of resolving the reasonable accommodation claim, an interpretive dispute might arise under Article 22 over the jobs for which Humble was eligible.  However, any interpretation of the CBA's provisions in the present case is only potential and limited; the CBA terms do not inhere in the nature of Humble's reasonable accommodation claim, nor does the claim, based on non-negotiable duties under Washington law, 'substantially depend' upon application and

---

[28]*Id.* at 6.

[29]See Complaint, ¶¶ 23-31.

interpretation of seniority requirements." *Id.* at 1011.

As in *Humble*, defendants have raised no more than a possibility that resolving Buckles' claim may requires interpreting the CBA. Even if the court is required to look to the CBA to evaluate Buckles' reasonable accommodation claim, there is no indication that the interpretive work would be so significant that a finding that the claim "substantially depends" on application of the CBA would be appropriate. See also *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1527 (9th Cir. 1995). Consequently, the court finds that Buckles' claims do not substantially rely on the CBA's seniority provisions and thus do not justify a finding that her failure to accommodate claim is preempted by § 301 of the LMRA.

Finally, defendants argue that the CBA's "mandatory Grievance Procedure" requires interpretation to resolve Buckles' claims.[30] In support of this argument, defendants cite *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), for the proposition that a CBA arbitration provision negotiated between an employer and a union "must be honored" unless a statute provides otherwise.[31] *Id.* at 248. *14 Penn Plaza* concerned preemption under the National Labor Relations Act ("NLRA"). It was a case in which a CBA explicitly provided that Age Discrimination in Employment Act ("ADEA") claims would be subject to arbitration, and further, that "[a]ll such claims shall be subject to the grievance and arbitration procedures . . . as the sole and exclusive remedy for violations."[32] *Id.* at 252. As other courts have noted, *14 Penn Plaza* did not address § 301 preemption. *Meyer v. Irwin Industries, Inc.*, 723 F.Supp.2d 1237, 1247 (C.D. Cal. 2010). Indeed, the Supreme Court in *14 Penn Plaza* limited its holding to cases in which the CBA "clearly and unmistakably requires union members to arbitrate ADEA claims." *14 Penn Plaza*, 556 U.S. at 274.

In contrast to *14 Penn Plaza*, here the CBA's grievance procedure defines a grievance "as any controversy arising during the term of this Agreement *relating to the application or interpretation of this Agreement*. . . ."[33] The CBA does not clearly state that claimed violations of state law must be resolved through the grievance procedure; rather, it states only that disputes involving application or interpretation of the CBA are subject to the grievance procedure. The CBA, in fact, expressly limits the authority of the grievance arbitrator to decide "whether or not there has been a violation of the Agreement in the respects alleged in the grievance." Based on a plain reading of the text, the arbitrator has no authority to determined whether state law has been violated. Compare *Coleman v. Southern*

---

[30]Opposition at 7.

[31]*Id.* (quoting *14 Penn Plaza*, 556 U.S. at 247-48 ("Thus, the CBA's arbitration provision must be honored unless the ADEA itself removes this particular class of grievances from the NLRA's broad sweep")).

[32]The provision also applied to claims under the Americans with Disabilities Act. *14 Penn Plaza*, 556 U.S. at 252.

[33]CBA at 24 (emphasis added).

*Wine & Spirits of California, Inc.*, No. 11–501 SC, 2011 WL 3359743, *7 (N.D. Cal. Aug. 2, 2011) (finding a racial discrimination claim preempted because a CBA "clearly and unmistakably require[d]" arbitration of the claim by providing that "[i]t is the desire of both parties to this Agreement that disputes and grievances arising hereunder involving interpretation or application of the terms of this Agreement, *including any statutory or common law claims of sex, race, age, disability or other prohibited discrimination*, shall be settled amicably or if necessary, by final and binding arbitration as set forth herein").

Furthermore, the language of the CBA in this case more clearly excludes adjudication of state law causes of action than the CBA in *Meyer*.  There, a CBA provided that "any controversy, dispute or disagreement . . . shall be adjusted pursuant to these Grievance and Aribrtration Procedures."  The court held did this language did "not clearly or unmistakably provide that Plaintiff's state law claims are subject to binding arbitration," and therefore did not support defendants' preemption argument. *Meyer*, 723 F.Supp.2d at 1247.  Here, the CBA grievance provision is significantly more limited, in that it requires that the grievance procedure be used only to determine if there has been a violation of the agreement itself.  The state law causes of action Buckles pleads have an independent legal basis separate and apart from the CBA.

Defendants accurately characterize Buckles' complaint as "bare-bones."  The absence of specific allegations regarding the circumstances under which she was terminated and the nature of the parties' disagreement makes it difficult to ascertain to what extent her claims implicate provisions of the CBA. The Ninth Circuit, however, "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).  Based on the present record, the court cannot conclude that Buckles' claims are preempted. Defendants, therefore, have not met their burden of establishing that removal was proper.

### D.      Request for Attorneys' Fees

When a district court remands a case, 28 U.S.C. § 1447(c) permits it to award attorneys' fees if the removing party lacked an objectively reasonable basis for removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  While the court has concluded that defendants failed to establish that removal was proper, it cannot say that defendants' effort to have the case litigated in federal court was objectively unreasonable.  "The demarcation between preempted claims and those that survive § 301's reach is not . . . a line that lends itself to analytical precision." *Cramer*, 255 F.3d at 691.  Given the nature of § 301 preemption analysis, and the lack of factual detail in the complaint, defendants' removal was not objectively unreasonable.  The court therefore denies Buckles' request for attorneys' fees.

## III.  CONCLUSION

For the reasons stated, the court directs the clerk to remand this action to Los Angeles Superior Court forthwith.